FILED
01/07/2021
*Shirley Faust*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Emily Baze
DV-32-2021-0000012-DS
Deschamps, Robert L III
1.00

David C. Berkoff
BERKOFF LAW FIRM, P.C.
1917 S. Higgins Avenue
Missoula, Montana 59801
Telephone (406) 546-3038
Email: david@berkofflaw.com
        dberkoff2011@gmail.com

Attorneys for Plaintiffs

MONTANA FOURTH JUDICIAL DISTRICT COURT, MISSOULA COUNTY

| | |
|---|---|
| KARIS NEWBARY and BRANDIE HOY, <br><br> Plaintiffs, <br><br> v. <br><br> ENTERPRISE RAC COMPANY OF MONTANA/WYOMING, LLC; DEVIN HUTTON; JORDAN COBB; and DOE DEFENDANTS 1-3, <br><br> Defendants. | Cause No. _____ <br> Dept. No. _____ <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW, Plaintiffs, Karis Newbary ("Newbary") and Brandie Hoy

("Hoy"), and for their Complaint against the Defendants, Enterprise RAC

Company of Montana/Wyoming, LLC, ("Enterprise"); Devin Hutton ("Hutton");

Jordan Cobb ("Cobb"); and DOE Defendants 1-3, states and alleges as follows:

/

COMPLAINT AND DEMAND FOR JURY TRIAL                    PAGE 1

A. The Parties.

1. Plaintiff, Karis Newbary, is and was at all times relevant to this Complaint, a resident of Missoula, Missoula County, Montana.

2. Plaintiff, Brandie Hoy, is and was at all times relevant to this Complaint, a resident of Helena, Lewis & Clark County, Montana.

3. Defendant Enterprise is and was at all times relevant to this Complaint, a Delaware limited liability company licensed to do business in Montana.  Enterprise is owned, operated, is associated with, and does business as Enterprise Holdings, Enterprise Rent-a-Car, and Enterprise Car Sales.  Enterprise is the successor entity to CORPAT, LLC, a Montana limited liability company d/b/a National/Alamo Car Rental ("National").  Enterprise purchased National in 2018.

4. Defendant Hutton is and was at all times relevant to this Complaint, the Regional Manager for Enterprise, supervised Newbary, and on information and belief is a resident of Missoula, Missoula County, Montana.

5. Respondent Cobb is and was at all times relevant to this Complaint, the Area Manager for Enterprise, supervised Hoy, and on information and belief is a resident of Bozeman, Gallatin County, Montana.

6. DOE Defendants 1-3 are yet unknown persons or entities that may be partially or wholly liable for any damages arising from the claims described herein.

/

B. Jurisdiction and Venue.

7. This Court has jurisdiction over the parties pursuant to Rule 4 of the Montana Rules of Civil Procedure.

8. Venue is proper before this Court pursuant to Montana Code Annotated § 25-1-122(2)(a) and (c).

C. Background Facts.

9. Newbary was hired as National's Missoula Branch Manager on December 18, 1998. Newbary was an excellent employee and was among National's top local producers. Newbary continued to accel when Enterprise purchased National. Newbary generally received positive job performance evaluations and received raises over time. Newbary was awarded a Fiscal Year 2019 Exceptional Achievement Award and was the top airport branch for Enterprise's Frontier Group. Newbary had been employed by Enterprise and National for over 20 years and was earning approximately $75,000 per year in salary and benefits at the time of her termination.

10. Hoy was initially hired as a Rental Agent by National in March of 2005. Hoy was promoted to National's Helena Branch Manager on April 7, 2006. Hoy was an excellent employee and was among National's top producers. Hoy never went a month without earning commission bonuses with National. Hoy continued to perform exceptionally well after Enterprise purchased National. Hoy generally

received "above expectations" or "above average" annual performance evaluations and raises over time. Hoy had been employed by Enterprise and National for over 14 years and was earning approximately $70,000 per year in salary and benefits at the time of her termination.

11. Enterprise purchased National in 2018. Newbary and Hoy were assured by Enterprise management that the change-over would be seamless, their positions, salaries, and hours worked would remain the same, and that they would receive cross-training on the Enterprise system so that they would have "Tri-Brand" training. "Tri-Brand" training is critical because it allows an employee to work across all three Enterprise-owned brands—Enterprise, National, and Alamo. A Tri-Brand trained employee is more valuable to the company.

12. Despite assurances of continued employment, a "seamless" transition, and promises of "Tri-Brand" training, Enterprise, through Cobb and Hutton, refused to provide either Newbary or Hoy with Tri-Brand training and instead provided Tri-Brand training to younger, less experienced, less successful, and lesser-paid employees. Defendants' intentional refusal to provide either Newbary or Hoy with Tri-Brand training made them less valuable to the company.

13. Defendants' decision to not Tri-Brand train Hoy or Newbary was motivated by Enterprise's desire to cut costs and increase profits at the expense of more highly paid employees. Hoy and Newbary were two older and higher paid

employees within the company. By intentionally not Tri-Brand training Hoy and Newbary, Defendants made both less valuable to the business, which in turn allowed Defendants to justify promotion and/or retention of its younger and lesser-paid employees who were Tri-Brand trained while terminating Newbary and Hoy.

Enterprise's Termination of Newbary.

14. In January 2020, Newbary's Enterprise co-manager in the Missoula Division, Joe Coker ("Coker"), was promoted. Coker was less productive than Newbary, is younger than Newbary, had less experience than Newbary, and was paid far less. However, Coker had been intentionally Tri-Brand trained while Newbary had intentionally not been Tri-Brand trained.

15. After Coker's promotion, Enterprise decided to save more money and increase its profits by combining the management positions held by Newbary and Coker into a single "Missoula Tri-Brand Manager" position. Hutton informed Newbary that because she had not been cross-trained for the Enterprise system that she was not going to be given a chance to apply for the new Missoula Tri-Brand Manager position. Rather than provide Newbary with Tri-Brand training, Newbary was demoted to an Assistant Tri-Brand Missoula Manager position and was told "We just want to set you up to succeed and not fail." Enterprise then posted the new Missoula Tri-Brand Manager position in-house and awarded it to a younger, far less experienced, and lesser paid employee named Thomas Brooks.

16.  On February 12, 2020, Newbary was called into a meeting with Hutton's supervisor, Justin Steckelberg.  Steckelberg asked Newbary if she planned to continue working for Enterprise.  Newbary was somewhat taken back by the question because she had no intention of quitting.

17.  On March 22, 2020, Hutton called Newbary at home and asked her if she felt safe at work because of the COVID-19 outbreak.  Newbary is a cancer survivor and has a compromised immune system.  Newbary advised Hutton that she did feel safe at work but that she wanted to consult with her physician.  Newbary's physician advised Newbary that her immune system was compromised and that she should limit her exposure to people if possible.  Newbary called Hutton and informed Hutton of her physician's advice to limit exposure to others.  Hutton told Newbary that he would arrange for her to have two-weeks' emergency paid time off.  Hutton did not offer any other accommodation, including providing a different work schedule, or supplying personal protective gear that would allow her to continue her work.

18.  Newbary took paid time off on March 24, 2020.  A few days before her two-week paid time off expired, Hutton called Newbary to inform her that she was being furloughed until April 30, 2020.  Newbary advised Hutton that she was ready, willing, and able to return to work and would rather not be furloughed.

Hutton told Newbary that Enterprise would decide about her future employment before April 30, 2020.

19. On April 22, 2020, Enterprise general manager, Eric Schonoff, and Enterprise human resources manager, Kat Manning, called Newbary to inform her that she was being terminated. Enterprise offered a severance which amounted to one week's pay for each year she had worked for the company not to exceed 15 weeks, and that Enterprise would deduct the 2 weeks of emergency paid time off. Enterprise agreed to pay the proposed severance if and only if Newbary released Enterprise from any claims for wrongful discharge or discrimination. Newbary declined Enterprise's offer of severance because she strongly believed that her firing was unlawful and was pretextual.

20. Enterprise retained several managers and assistant managers in the Missoula office while terminating only Newbary. Hailey Driver was retained as an assistant manager. Driver is younger, was less productive, was paid far less, and has been with Enterprise for less than one year. Zachary Zhang was retained as an assistant manager. Zhang younger, was paid far less, and has been employed by Enterprise for less than three years. Enterprise retained Gabby Schlanger as a management trainee. Schlanger is younger, was paid far less, and has been employed by Enterprise for less than two years. Jason Babcock was retained by Enterprise. Babcock is younger, was paid far less, has been employed by less than

two years.  All of the managers retained in the Missoula location retained by

Enterprise were less experienced, were less productive, are younger, and are paid

far less than Newbary.

21.  Enterprise's termination of Newbary was clearly pretextual and was not a

legitimate reduction in force.  Enterprise seized on the COVID-19 outbreak as

means to eliminate Newbary, who was paid far more than the younger, less

experienced, and less productive employees that were retained, simply so it could

save money and increase its profits.  Enterprise's unlawful termination has become

even more clear as it is currently advertising Management Trainee jobs in the

Missoula area for $34,000 less than Enterprise was paying Newbary when she was

fired without good cause.

Enterprise's Termination of Hoy.

22.  Hoy was instructed by Cobb to train all of the Enterprise Helena branch's

younger, less experienced, and lower paid Management Trainees and assistant

managers on the National/Alamo system.  However, Cobb refused to train Hoy on

the Enterprise system.  Cobb's refusal to train Hoy on the Enterprise system made

her less valuable to the company.

23.  In late April 2020, Hoy was permanently laid off by Enterprise with no

real explanation other than to mention COVID-19.  While Hoy was fired,

Enterprise retained several Helena-based Management Trainees and assistant

managers all of whom are younger, less productive, less experienced, and are paid far less than Hoy.

24. After her termination Enterprise offered Hoy a severance equal to one week's pay for every year she was employed not to exceed 15 years. Enterprise made the offer contingent upon Hoy signing a release of any claims for discrimination and wrongful discharge against Enterprise and its managers. Hoy rejected Enterprise's severance offer because she believed she was unlawfully terminated.

25. Enterprise's termination of Hoy because of COVID-19 was false because Enterprise is currently advertising a Management Trainee position in the Helena area for $30,000 less than Hoy was being paid annually at the time of her termination. Enterprise's termination of Hoy was not a legitimate reduction in force was without good cause and was unlawful.

D. Causes of Action.

## WRONGFUL DISCHARGE
### (Lack of Good Cause)

26. Plaintiffs restate each and every previous allegation as though fully stated here.

27. The Montana Wrongful Discharge from Employment Act, Montana Code Annotated § 39-2-901 et seq. ("WDFEA"), makes it unlawful for an employer to terminate a non-probationary employee without good cause.

COMPLAINT AND DEMAND FOR JURY TRIAL                    PAGE 9

28. "Good cause" is defined by the WDFEA as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." A legitimate business reason for termination is defined as a reason that is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business."

29. Defendants' termination of Plaintiffs lacked good cause. Plaintiffs were productive and high performing non-probationary period employees. Plaintiffs did not disrupt Defendants' operations. Plaintiffs were told that they were being terminated because of the COVID-19 outbreak. However, Defendants' stated reason for terminating Plaintiffs was false, illegitimate and pretextual. Defendants retained younger, less experienced, less productive, and lesser-paid managers while terminating Plaintiffs. Defendants thereafter posted job openings for "Management Trainee" positions in Helena and Missoula at a salary $30,000 less than Defendants were paying Plaintiffs.

30. Defendants' termination of Plaintiffs without good cause entitles Plaintiffs to up to four years of lost wages and benefits and any and all consequential damages arising from Plaintiffs' terminations.

<u>WRONGFUL DISCHARGE</u>
<u>(Violation of Written Employment Policies)</u>

31. Plaintiffs restate each and every previous allegation as though fully stated here.

32. The WDFEA makes it unlawful for an employer to terminate a non-probationary employee in violation of its express written personnel policies.

33. Enterprise's written employment policies claim that employment with the company is "at-will" and that Enterprise may terminate any employee "at any time with or without cause and with or without notice." Notwithstanding Enterprise's claim to terminate employees at will, Enterprise's written employment policies only allow for termination for serious disciplinary matters.

34. Enterprise's written "at-will" employment policy constitutes a *per se* violation of the WDFEA because passage of the WDFEA in 1987 abrogated Montana's "at-will" employment laws. *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 25, 776 P.2d 488, 490 (1989). Furthermore, Plaintiffs were not fired for serious disciplinary matters.

35. Defendants' termination of Plaintiffs in violation of its own written employment policies entitles Plaintiffs to up to four years of lost wages and benefits and any and all consequential damages arising from Plaintiffs'

D. Prayer for Relief.

WHEREFORE, Plaintiffs pray for the following relief:

A.    All damages permitted under the WDFEA against Defendants,

including all economic and consequential damages as allowed by law;

B.    Interest at the Montana statutory rate from Plaintiffs' respective dates

of termination; and

C.    Any other relief the Court deems just and fit.

DATED this ___ day of September 2020.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims appropriately before a jury.

Attorneys for Plaintiffs:

By _____

BERKOFF LAW FIRM, P.C.
Email: david@berkofflaw.com