FILED
06/28/2021
*Shirley Faust*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Emily Baze
DV-32-2021-0000012-DS
Deschamps, Robert L III
11.00

David C. Berkoff
Carey B. Schmidt
SCHMIDT BERKOFF, PLLC
1917 S. Higgins Avenue
Missoula, Montana 59801
Telephone (406) 552-1450
Email: carey@blackfootlaw.com
    david@berkofflaw.com
    dberkoff2011@gmail.com

*Attorneys for Plaintiffs*

MONTANA FOURTH JUDICIAL DISTRICT COURT, MISSOULA COUNTY

| | |
|---|---|
| KARIS NEWBARY and BRANDIE HOY,<br><br>Plaintiffs,<br><br>v.<br><br>ENTERPRISE RAC COMPANY OF MONTANA/WYOMING, LLC; DEVIN HUTTON; JORDAN COBB; and DOE DEFENDANTS 1-3,<br><br>Defendants. | Cause No. DV-21-12<br>Dept. No. 2<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs, Karis Newbary ("Newbary") and Brandie Hoy ("Hoy"), by and through their counsel of record, Schmidt Berkoff, PLLC, and for their Complaint against the Defendants, Enterprise RAC Company of Montana/Wyoming, LLC, ("Enterprise"); Devin Hutton ("Hutton"); Jordan Cobb ("Cobb"); and DOE Defendants 1-3, states and alleges as follows:

A. <u>The Parties</u>.

1. Plaintiff, Karis Newbary, is and was at all times relevant to this Complaint, a resident of Missoula, Missoula County, Montana.

2. Plaintiff, Brandie Hoy, is and was at all times relevant to this Complaint, a resident of Helena, Lewis & Clark County, Montana.

3. Defendant Enterprise is and was at all times relevant to this Complaint, a Delaware limited liability company licensed to do business in Montana. Enterprise is owned, operated, is associated with, and does business as Enterprise Holdings, Enterprise Rent-a-Car, and Enterprise Car Sales. Enterprise is the successor entity to CORPAT, LLC, a Montana limited liability company d/b/a National/Alamo Car Rental ("National"). Enterprise purchased National in 2018.

4. Defendant Hutton is and was at all times relevant to this Complaint, the Regional Manager for Enterprise, supervised Newbary, and on information and belief is a resident of Missoula, Missoula County, Montana.

5. Defendant Cobb is and was at all times relevant to this Complaint, the Area Manager for Enterprise, supervised Hoy, and on information and belief is a resident of Bozeman, Gallatin County, Montana.

6. DOE Defendants 1-3 are yet unknown persons or entities that may be partially or wholly liable for any damages arising from the claims described herein.

B. Jurisdiction and Venue.

7. This Court has jurisdiction over the parties pursuant to Rule 4 of the Montana Rules of Civil Procedure.

8. Venue is proper before this Court pursuant to Montana Code Annotated § 25-1-122(2)(a) and (c).

C. Background Facts.

9. Newbary was hired as National's Missoula Branch Manager on December 18, 1998. Newbary was an excellent employee and was among National's top local producers. Newbary continued to accel when Enterprise purchased National. Newbary generally received positive job performance evaluations and received raises over time. Newbary was awarded a Fiscal Year 2019 Exceptional Achievement Award and was the top airport branch for Enterprise's Frontier Group. Newbary is 46 years old, had been employed by Enterprise and National for over 20 years, and was earning approximately $75,000 per year in salary and benefits at the time of her termination.

10. Hoy was initially hired as a Rental Agent by National in March of 2005. Hoy was promoted to National's Helena Branch Manager on April 7, 2006. Hoy was an excellent employee and was among National's top producers. Hoy never went a month without earning commission bonuses with National. Hoy continued to perform exceptionally well after Enterprise purchased National in 2018. Hoy generally received "above expectations" or "above average" annual performance

evaluations and raises over time. Hoy is 43 years old, had been employed by Enterprise and National for over 14 years, and was earning approximately $70,000 per year in salary and benefits at the time of her termination.

11.   Enterprise purchased National in 2018. Newbary and Hoy were assured by Enterprise management that the change-over would be seamless, their positions, salaries, and hours worked would remain the same, and that they would receive cross-training on the Enterprise system so that they would have "Tri-Brand" training. "Tri-Brand" training is critical because it allows an employee to work across all three Enterprise-owned brands—Enterprise, National, and Alamo. A Tri-Brand trained employee is more valuable to the company.

12.   Despite assurances of continued employment, a "seamless" transition, and promises of "Tri-Brand" training, Enterprise, through Cobb and Hutton, refused to provide either Newbary or Hoy with Tri-Brand training and began a pattern of discriminatory conduct towards Newbary and Hoy based upon their respective age, gender, and disability status. Enterprise instead provided Tri-Brand training to younger, less experienced, less successful, and lesser-paid employees. Defendants' intentional refusal to provide either Newbary or Hoy with Tri-Brand training made them less valuable to the company.

13.   Defendants' decision to not Tri-Brand train Hoy or Newbary was

motivated by Enterprise's desire to cut costs and increase profits at the expense of more highly paid employees. Hoy and Newbary were two older and higher paid employees within the company. By intentionally not Tri-Brand training Hoy and Newbary, Defendants made both less valuable to the business, which in turn allowed Defendants to justify promotion and/or retention of its younger and lesser-paid employees who were Tri-Brand trained while terminating Newbary and Hoy.

<u>Discriminatory Conduct Toward and Termination of Newbary</u>.

14. Almost immediately after taking over his managerial role, Hutton, as regional manager treated Newbary differently from younger, male, and non-disabled Montana managers.

15. In January 2020, Newbary's Enterprise co-manager in the Missoula Division, Joe Coker ("Coker"), was promoted which meant Coker would no longer be working with Newbary in Missoula. Coker was less productive than Newbary, is younger than Newbary, had less experience than Newbary, was paid far less, and is a non-disabled male. However, Coker had been intentionally Tri-Brand trained while Newbary had intentionally not been Tri-Brand trained. Hutton's decision to cross-train Coker made Coker eligible for promotion within the "Tri-Branded" company.

16. After Coker's promotion, Enterprise decided to save more money and

increase its profits by combining the management positions held by Newbary and Coker into a single "Missoula Tri-Brand Manager" position. Hutton informed Newbary that because she had not been cross-trained for the Enterprise system that she was not going to be given a chance to apply for the new Missoula Tri-Brand Manager position. Rather than provide Newbary with Tri-Brand training, Newbary was demoted to an Assistant Tri-Brand Missoula Manager position and was told "We just want to set you up to succeed and not fail." Enterprise then posted the new Missoula Tri-Brand Manager position in-house and awarded it to a younger, far less experienced, lesser paid, non-disabled male employee named Thomas Brooks.

17. On February 12, 2020, Newbary was called into a meeting with Hutton's supervisor, Justin Steckelberg. Steckelberg asked Newbary if she planned to continue working for Enterprise. Newbary was somewhat taken back by the question because she had no intention of quitting.

18. On March 22, 2020, Hutton called Newbary at home and asked her if she felt safe at work because of the COVID-19 outbreak. Newbary is a cancer survivor and has a compromised immune system. Newbary advised Hutton that she did feel safe at work but that she wanted to consult with her physician. Newbary's physician advised Newbary that her immune system was compromised and that she should limit her exposure to people if possible. Newbary called Hutton and

informed Hutton of her physician's advice to limit exposure to others. Hutton told Newbary that he would arrange for her to have two-weeks' emergency paid time off. Hutton did not offer any other accommodation, including providing a different work schedule, or supplying personal protective gear that would allow her to continue her work.

19. Newbary took paid time off on March 24, 2020. A few days before her two-week paid time off expired, Hutton called Newbary to inform her that she was being furloughed until April 30, 2020. Newbary advised Hutton that she was ready, willing, and able to return to work and would rather not be furloughed. Hutton told Newbary that Enterprise would decide about her future employment before April 30, 2020, and that Newbary would either be: (1) rehired, (2) furloughed for more time, and (3) terminated.

20. On April 22, 2020, Enterprise general manager, Eric Schonoff, and Enterprise human resources manager, Kat Manning, called Newbary to inform her that she was being terminated. Enterprise offered a severance which amounted to one week's pay for each year she had worked for the company not to exceed 15 weeks, and that Enterprise would deduct the 2 weeks of emergency paid time off. Enterprise agreed to pay the proposed severance if and only if Newbary released Enterprise from any claims for wrongful discharge or discrimination. Newbary

declined Enterprise's offer of severance because she strongly believed that her firing was unlawful, pretextual, and due to her gender, age, and disability.

21. Enterprise retained several managers and assistant managers in the Missoula office while terminating only Newbary. Hailey Driver was retained as an assistant manager. Driver is younger, not disabled, was less productive, was paid far less, and has been with Enterprise for less than one year. Zachary Zhang was retained as an assistant manager. Zhang is younger, male, not disabled, was paid far less, and has been employed by Enterprise for less than three years. Enterprise retained Gabby Schlanger as a management trainee. Schlanger is younger, not disabled, was paid far less, and has been employed by Enterprise for less than two years. Jason Babcock was retained by Enterprise. Babcock is younger, male, not disabled, was paid far less, has been employed by less than two years. All of the managers retained in the Missoula location retained by Enterprise were less experienced, were less productive, are younger, not disabled, and are paid far less than Newbary. At the time of her termination, Newbary was earning $75,000 a year, plus benefits. Enterprise is currently advertising Management Trainee jobs in the Missoula area for $34,000 less than Enterprise was paying Newbary.

22. Enterprise's termination of Newbary was clearly pretextual and was not a legitimate reduction in force. Enterprise seized on the COVID-19 outbreak as means to eliminate Newbary, who was paid far more than the predominantly male,

younger, not disabled, less experienced, and less productive employees that were retained, simply so it could save money and increase its profits. Enterprise's unlawful termination has become even more clear as it is currently advertising Management Trainee jobs in the Missoula area for $34,000 less than Enterprise was paying Newbary when she was fired without good cause. Newbary's termination is in violation of the Montana Human Rights Act, Title VII of the Civil Rights Act, Age Discrimination in Employment Act, and Americans with Disabilities Act and amendments.

<u>Discriminatory Conduct Toward and Termination of Hoy</u>.

23. Almost immediately after taking over his managerial role, Cobb treated Hoy differently from younger and male Helena Montana managers and assistant managers.

24. In late April 2020, Hoy was permanently laid off by Enterprise with no real explanation other than to mention COVID-19. At the time of her firing, Hoy was earning $53,000 in salary and received benefits. Her total compensation was more than $70,000. Hoy is 46 years old and had far more experience working for Enterprise and National than any other Helena-based manager, including her supervisor, Cobb. Cobb is in his early 30's and has only been with Enterprise for six years. While Hoy was fired, Enterprise retained several Helena-based

Management Trainees and assistant managers all of whom are younger, less productive, less experienced, and are paid far less than Hoy.

25. After her termination Enterprise offered Hoy a severance equal to one week's pay for every year she was employed not to exceed 15 years. Enterprise made the offer contingent upon Hoy signing a release of any claims for discrimination and wrongful discharge against Enterprise and its managers. Hoy rejected Enterprise's severance offer because she believed she was unlawfully terminated based upon her age and gender.

26. Enterprise's termination of Hoy because of COVID-19 was false because Enterprise is currently advertising a Management Trainee position in the Helena area for $30,000 less than Hoy was being paid annually at the time of her termination. Enterprise's termination of Hoy was not a legitimate reduction in force was without good cause and was unlawful. Enterprise underhandedly used the COVID epidemic terminate Hoy while retaining less experienced, younger, and male managers and assistant managers at the Helena branch in violation of the Montana Human Rights Act, Title VII of the Civil Rights Act and Age Discrimination in Employment Act.

D. Causes of Action.

WRONGFUL DISCHARGE (NEWBARY and HOY)
(Lack of Good Cause)
(against Hutton, Cobb, and Enterprise)

27. Plaintiffs restate each and every previous allegation as though fully stated here.

28. The Montana Wrongful Discharge from Employment Act, Montana Code Annotated § 39-2-901 et seq. ("WDFEA"), makes it unlawful for an employer to terminate a non-probationary employee without good cause.

29. "Good cause" is defined by the WDFEA as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." A legitimate business reason for termination is defined as a reason that is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business."

30. Defendants' termination of Plaintiffs lacked good cause. Plaintiffs were productive and high performing non-probationary period employees. Plaintiffs did not disrupt Defendants' operations. Plaintiffs were told that they were being terminated because of the COVID-19 outbreak. However, Defendants' stated reason for terminating Plaintiffs was false, illegitimate and pretextual. Defendants retained younger, less experienced, less productive, and lesser-paid managers while terminating Plaintiffs. Defendants thereafter posted job openings for "Management Trainee" positions in Helena and Missoula at a salary $30,000 less than Defendants were paying Plaintiffs.

31. Defendants' termination of Plaintiffs without good cause entitles Plaintiffs to up to four years of lost wages and benefits and any and all consequential damages arising from Plaintiffs' terminations.

<u>WRONGFUL DISCHARGE (NEWBARY and HOY)</u>
<u>(Violation of Written Employment Policies)</u>
<u>(against Hutton, Cobb, and Enterprise)</u>

32. Plaintiffs restate each and every previous allegation as though fully stated here.

33. The WDFEA makes it unlawful for an employer to terminate a non-probationary employee in violation of its express written personnel policies.

34. Enterprise's written employment policies claim that employment with the company is "at-will", and that Enterprise may terminate any employee "at any time with or without cause and with or without notice." Notwithstanding Enterprise's claim to terminate employees at will, Enterprise's written employment policies only allow for termination for serious disciplinary matters.

35. Enterprise's written "at-will" employment policy constitutes a *per se* violation of the WDFEA because passage of the WDFEA in 1987 abrogated Montana's "at-will" employment laws. *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 25, 776 P.2d 488, 490 (1989). Furthermore, Plaintiffs were not fired for serious disciplinary matters.

36. Defendants' termination of Plaintiffs in violation of its own written employment policies entitles Plaintiffs to up to four years of lost wages and benefits and any and all consequential damages arising from Plaintiffs' terminations.

<u>DISABILITY DISCRIMINATION (NEWBARY)</u>
<u>(against Hutton and Enterprise)</u>

37. Plaintiffs restate each and every previous allegation as though fully stated here.

38. The Montana Human Rights Act, Montana Code Annotated § 49-2-303 ("MHRA"), as well as the federal Americans with Disabilities Act ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"), 42 § U.S.C. 12101, et seq. (cumulatively referred to as "ADA"), make it unlawful for an employer to discriminate against an employee because of the employee's disability. Both the MHRA and ADA are broadly interpreted to provide the most protection to a disabled employee, including an employee who is perceived as disabled.

39. The ADA and MHRA both make it a violation of the law to: (1) limit or segregate an employee because of a disability or perceived disability; (2) fail to engage in the interactive process to determine reasonable accommodation for a known disability; or (3) terminate an employee because of a disability or perceived disability.

40. Newbary suffered from a serious physical impairment that affected one or

more life activities.  Newbary is a cancer survivor having undergone two bouts of cancer and suffers from a compromised immune system which affect several major life activities.  Cancer and its lingering effects are considered disabilities protected under the ADA and MHRA.

41.  Hutton and Enterprise discriminated against Newbary when they undermined Newbary's ability to perform her job, criticized her performance, failed to engage in the interactive process in coming to reasonable accommodation, refused to return Newbary to work, and fired Newbary all because of her disability or perceived disability.

42. Hutton and Enterprise's violation of the MHRA and ADA entitle Newbary to damages in the form of front and back pay from her termination to retirement age, lost benefits, emotional distress, attorney fees and costs, and punitive damages as allowed under the ADA.

<u>AGE DISCRIMINATION (NEWBARY and HOY)</u>
<u>(against Hutton, Cobb, and Enterprise)</u>

43.  Plaintiffs restate each and every previous allegation as though fully stated here.

44. The Montana Human Rights Act, Montana Code Annotated § 49-2-303 ("MHRA"), as well as 29 U.S.C. § 621 of the federal Age Discrimination in Employment Act ("ADEA") make it unlawful for an employer to discriminate against an employee because of the employee's age.

45. A *prima facie* claim of ADEA age discrimination in proven where the terminated employee: (1) is at least forty years old, (2) performed her job satisfactorily, (3) was discharged, and (4) was either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. *Diaz v. Eagle Produce Ltd Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008).

46. Newbary and Hoy can clearly prove age discrimination by Defendants. Both are over 40. Both were high performers with positive if not excellent performance reviews. Both were the oldest managers in the Helena and Missoula divisions terminated by Enterprise allegedly because of the COVID outbreak. Both were replaced by or were terminated instead of substantially younger, less experienced, and lower-paid managers in the Missoula and Helena divisions.

47. Defendants' violation of the MHRA and ADEA entitles Newbary and Hoy to damages in the form of front and back pay from their date of termination to retirement age, lost benefits, emotional distress, attorney fees and costs, and all other damages as allowed under the MHRA and ADEA.

SEX DISCRIMINATION (NEWBARY and HOY)
(against Hutton, Cobb, and Enterprise)

48. Plaintiffs restate each and every previous allegation as though fully stated here.

49. The Montana Human Rights Act, Montana Code Annotated § 49-2-303 ("MHRA") and 42 U.S.C. § 2000e-(2)(a) of the federal Civil Rights Act ("Title VII") make it unlawful for an employer to discriminate because of sex.

50. Newbary and Hoy can prove a prima facie claim of disparate treatment sex discrimination. Both are members of a protected class based upon their sex. Both were qualified for their respective managerial positions and had nearly impeccable work histories. Both were terminated from their positions. Defendants retained less experienced and less qualified male managers at the Missoula and Helena divisions while terminating Newbary and Hoy. Defendants purported reasons for terminating Newbary and Hoy while retaining less experienced male managers –the COVID outbreak—is pretextual and unsupported by the facts and or law.

51. Defendants' violation of the MHRA and Title VII entitles Newbary and Hoy to damages in the form of front and back pay from their date of termination to retirement age, lost benefits, emotional distress, attorney fees and costs, and all other damages as allowed under the MHRA and Title VII.

E. Prayer for Relief.

WHEREFORE, Plaintiffs pray for the following relief:

A. All damages permitted under the WDFEA against Defendants, including all economic and consequential damages as allowed by law;

B. All damages permitted under the Montana Human Rights Act, Title VII of the Civil Rights Act, Age Discrimination in Employment Act, and/or Americans with Disabilities Act, including front pay and back pay from the date of termination to retirement age, lost benefits, the cost of health care, emotional distress damages, and all other consequential damages resulting from Plaintiffs' respective unlawful terminations;

C. Affirmative and preventative relief against Enterprise, Cobb, and Hutton, including but not limited to, requiring Defendants and its management-level employees to undergo comprehensive discrimination training and counseling by a capable independent third-party entity;

D. Interest at the Montana statutory rate from Plaintiffs' respective dates of termination;

E. Punitive damages as allowed under Title I of the ADA (Newbary only);

F. Prevailing Party attorney fees and costs; and

G. Any other relief the Court deems just and fit.

DATED this 28th day of June 2021.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims appropriately before a jury.

SCHMIDT BERKOFF, PLLC

 /s/ Carey B. Schmidt

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I, Carey Schmidt, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 06-28-2021:

David C. Berkoff (Attorney)
1917 S. Higgins
Missoula MT 59801
Representing: Brandie Hoy, Karis Newbary
Service Method: eService

Electronically signed by Derek Long on behalf of Carey Schmidt
Dated: 06-28-2021